UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STATE UNIVERSITY NEW YORK-      )
STUDENT LOAN SERVICE CENTER     )
ET AL.                          )
    Appellants,                 )
                                )
    V.                          )     C.A. No. 05-40052-MLW
                                )
HARRIET MENEZES,                )
    Appellee,                   )

MEMORANDUM AND ORDER

WOLF, D.J.                                          August 30, 2006

I.   SUMMARY

In September 2001, Appellee Harriet Menezes filed a Chapter 7 bankruptcy proceeding seeking to discharge student loan debts of $82,595.92.  After a trial on February 3, 2005, the bankruptcy court found that Menezes had proven that it would be an undue hardship for Menezes to repay her student loans and, therefore, discharged those debts pursuant to 11 U.S.C. §523(a)(8), and her other debts in the amount of $7,023.69 as well.

The Educational Credit Management Corporation ("ECMC") a non-profit Minnesota corporation to which Menezes owed $56,275.04 of her student loans, filed an appeal to this court.  The State University of New York Loan Center ("SUNY"), to which Menezes owed $5,458.40 in connection with her law school studies, also appealed.[1]

_____

[1]Menezes also owed $15,566.06 to The Education Resource Institute ("TERI") and $4,996.42 to the University of Massachusetts ("UMass").  Neither appealed the discharge of their loans to Menezes.

A hearing was held on March 17, 2006.

As described below, some of the findings of fact important to the bankruptcy court's conclusion that it would be an undue hardship for Menezes to repay her student loans are clearly erroneous.  As a result of relying on inadequately supported findings of fact, the bankruptcy court erred, as a matter of law, in concluding that Menezes had proven that it would be an undue hardship for her to repay her ECMC and SUNY loans.  Therefore, the bankruptcy court's decision is being reversed.

II.  THE APPLICABLE LAW

11 U.S.C. §523(a)(8) provides that debts arising from educational loans are not dischargable unless excepting them from discharge will impose an "undue hardship" on the debtor.  The burden of proving undue hardship is on the debtor.  Nash v. Connecticut Student Loan Foundation, 446 F.3d 188, 190-91 (1st Cir. 2006); Burkhead v. Educational Credit Management Corporation (In re Burkhead), 304 B.R. 560, 564 (Bankr. D. Mass. 2004). In attempting to prove undue hardship, a debtor:

> has a formidable task, for Congress has made the judgment that the general purpose of the Bankruptcy Code to give honest debtors a fresh start does not automatically apply to student loan debtors.  Rather, the interest in ensuring the continued viability of the student loan program takes precedence.

Nash, 446 F.3d at 191 (citation omitted).  Generally, an undue hardship can properly be found only in "truly exceptional circumstances, such as illness or the existence of an unusually

large number of dependents."  T.I. Fed. Credit Union v. Delbanis,

72 F.3d 921, 927 (1st Cir. 1995)(citation omitted).

As the First Circuit has explained, with regard to determining

whether a debtor has satisfied her substantial burden to prove

undue hardship:

> nine circuit courts of appeal [] have followed the Second
> Circuit's test set forth in Brunner v. New York State
> Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir.1987)
> (per curiam).  This is a tripartite test, requiring that
> the debtor show inability, at her current level of income
> and expenses, to maintain a "minimal" standard of living;
> the likelihood that this inability will persist for a
> significant portion of the repayment period;  and the
> existence of good faith efforts to repay the loans.  Id.
> at 396.
>
> A facially different test is the Eighth Circuit's
> totality-of-circumstances test, which would have courts
> consider the debtor's reasonably reliable future
> financial resources, his reasonably necessary living
> expenses, and "any other relevant facts."  See Long v.
> Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554
> (8th Cir.2003).  Appellant [in Nash] contends that this
> test does not include "good faith effort" under the
> "other relevant facts" rubric, although bankruptcy courts
> within the Eighth Circuit are not unanimous on this
> issue.  She urges a "true totality of the circumstances
> test," focusing solely on the ability of the debtor to
> maintain a minimal standard of living now and in "the
> foreseeable future" and still afford to make loan
> repayments.

Nash, 446 F.3d at 190.

As courts in the First Circuit have correctly held:

> [A]lthough §523(a)(8) does not allow a single debt to be
> partially discharged, individual educational loans may be
> discharged while others may be declared non-dischargeable
> depending on whether each loan, on a cumulative basis,
> imposes an undue hardship on the debtor and his or her
> dependents.

Grigas v. Sallie Mae Servicing Corp. (In re Grigas), 252 B.R. 866, 874 (Bankr. D., N.H. 2000); see also Educational Credit Management Corp. v. Kelly, 312 B.R. 200, 208 (B.A.P. 1st Cir. 2004); Coutts v. Massachusetts Higher Educ. Corp. (In re Coutts), 263 B.R. 394, 400-01 (Bankr.D.Mass. 2001); Lamanna v. EFS Svcs, Inc. (In re Lamanna), 285 B.R. 347, 353 (Bankr.D.R.I. 2002); but see Barrows v. Ill. Student Assistance Comm'n (In re Barrows), 182 B.R. 640, 653 (Bankr.D.N.H.1994).  Similarly, the Eighth Circuit, which employs the totality of the circumstances test, has held, "application of §523(a)(8) to each of [a debtor's] educational loans separately [is] not only allowed, it [is] required."  Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 137 (8th Cir. 1999).

Where, as here, a matter is before the District Court on an appeal taken after a trial, the court reviews questions of law de novo and applies the clearly erroneous standard to findings of facts.  Casco Northern Bank v. DN Assoc. (In re DN Associates), 3 F.3d 512, 515 (1st Cir. 1993); Fed. R. Bankr. P. 8013.  "The ultimate question of law – whether appellant proved 'undue hardship' - is subject to de novo review."  Nash, 446 F.3d at 191.

The standard for determining whether a finding of fact is clearly erroneous is important in the instant case.  "The bankruptcy court findings will be considered clearly erroneous if, after a review of the entire record, [the court is] left with the

definite and firm conviction that a mistake has been committed."
Bezanson v. Thomas (In re R & R Associates of Hampton), 402 F.3d
257, 264 (1st Cir. 2005); (citation and internal quotation omitted)
(emphasis added); Boroff v. Tully (In re Tully), 818 F.2d 106, 109
(1st Cir. 1987) (same). "'[W]here the conclusions of the [trier]
depend on its election among conflicting facts or its choice of
which competing inferences to draw from undisputed basic facts,
appellate courts should defer to such fact-intensive findings,
absent clear error.'" Tully, 818 F.2d at 109 (quoting Irons v. FBI,
811 F.2d 681, 684 (1st Cir. 1987)).  However, as the First Circuit
expressly stated in Tully and R&R Associates of Hampton, a
reviewing court must consider "the entire record" in determining
whether factual findings are clearly erroneous.


III. THE BANKRUPTCY COURT DECISION

     At the conclusion of the February 3, 2005 trial, the
bankruptcy court rendered its decision orally.  That decision is on
pages 127-131 of the trial transcript ("Tr.").

     The bankruptcy court recognized the Brunner test and the
totality of the circumstances test as two standards to determine
whether undue hardship has been proven, and noted that neither has
been chosen as the preferred test in the First Circuit.  It
declined to choose between the two tests because it found that they
led to the same conclusions.

Based on Menezes' testimony, the bankruptcy court found that she had experienced various difficulties which required her to receive subsidies from the Concord Housing Authority and MassHealth, free care from medical institutions, food stamps, and lifeline services from Verizon.  It noted that the Social Security Administration had found that Menezes was not totally or partially disabled.  However, the bankruptcy court stated that the Social Security Administration's decision only meant that she was not disabled according to its standards, rather than that she was not disabled at all.

The bankruptcy court also found that Menezes had experienced significant vision and neurological problems, which have hampered her from obtaining continuous and "significant employment."  Tr. at 129.  As a result of these circumstances, which it found to be beyond her control, the bankruptcy court determined that Menezes' income has been well below the amount needed to maintain a minimal standard of living.

In terms of her circumstances at the time of trial, the bankruptcy court stated that Debtor's Exhibit #9, which includes Income Schedule I and Expense Schedule J, indicated that Menezes would have "somewhat of a surplus" available to repay student loan debt if she could maintain her current employment.  Nevertheless, the bankruptcy court noted two problems.  First, it mentioned that Menezes' employer, United Airlines, was in "significant financial

difficulty," as evidenced by its Chapter 11 proceeding.  Second, the bankruptcy court determined that Schedule J did not truly reflect Menezes' needs because there was no allocation for her clothing, medical, and dental needs.  As a result, the bankruptcy court stated that the Schedule J only reflected her current situation in terms of what Menezes was  spending rather than what she actually needed.

Based on Menezes' work history, its finding that her physical problems are likely to continue for an extended period of time, and what the bankruptcy court characterized as the defendants' failure to controvert evidence of her disability, it determined that, looking toward the future, "there is no reason to believe that the . . . debtor's circumstances will not continue over an extended period of time, including repayment [] of this loan." Id. at 130.

Finally, the bankruptcy court stated that whether Menezes had made good faith efforts to repay the loans was not relevant because she never earned enough money to meet her appropriate needs.  In its view, the good faith requirement only applies when a debtor has enough money to meet her needs and make payments on her loans.

The bankruptcy court stated that the only countervailing circumstance was the additional money that Menezes received through the settlement of a lawsuit.  It stated that Menezes should use that money to pay for transportation to raise her income and meet her everyday needs, rather than to pay her student loans.

Based on the foregoing, the bankruptcy court concluded that Menezes had satisfied her burden of proving that the repayment of the loans would constitute an undue hardship and entered judgment in her favor.

## IV.  ANALYSIS

Menezes urges this court to "adopt the 'totality of the circumstances' test which would permit the bankruptcy court to consider a debtor's past good faith as part of 'an honest and intelligent judgment after having given due consideration to all of the information the parties have provided about the problem to be resolved.' See Nash, 2005 WL 2003372 at *3."  Brief of Appellee at 23.  However, it is not necessary for this court to choose between the Brunner and totality of the circumstances tests in this case because the bankruptcy court erred in finding undue hardship under either test.

The sole Circuit to utilize the totality of the circumstances test has characterized it as follows:

> In evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case.  Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt- while still allowing for a minimal standard of living- then the debt should not be discharged. Certainly, this determination will require a special consideration of the

> debtor's present employment and financial situation-
> including assets, expenses, and earnings-along with the
> prospect of future changes-positive or adverse-in the
> debtor's financial position.

Long, 322 F.3d at 554-55 (citations omitted)(emphasis added). The emphasized language in Long places the focus on what are, essentially, the first two prongs of the Brunner test.

As the First Circuit has stated, "[u]nder any test assessing eligibility for discharge of student loan debt, [the debtor] must show that her current inability to maintain a minimal standard of living if forced to repay the debt will continue in the future." Nash, 446 F.3d at 192.  Therefore, under the totality of the circumstances test a debtor must, at a minimum, prove that she is unable both to make particular student loan payments and to maintain a minimal standard of living.

The bankruptcy court made an error of law in not deciding individually whether the ECMC and SUNY loans should be discharged. See Grigas, 252 B.R. at 873-74; Kelly, 312 B.R. at 208; Gagne, 244 B.R. at 548.

Assuming without holding, that the totality of the circumstances test, rather than the similar Brunner test, should be employed, when viewed in the context of the entire record, key factual findings of the bankruptcy court are clearly erroneous.  In addition, based on the facts which are supported by the evidence,

the court finds that Menezes has not proven that being required to
repay her ECMC and SUNY student loans would be an undue hardship.

More specifically, it was clearly erroneous for the bankruptcy
court to find, in effect, that Menezes' financial situation at the
time of trial indicated that she could not then pay her ECMC and
SUNY loans without undue hardship.   As described earlier, the
bankruptcy court referred to Exhibit 9, Schedules I and J, in
discussing Menezes' monthly income and expenses.  Schedule I showed
monthly income of $529.27 for 2004.   Exhibit J showed monthly
expenses of $1018.66 for 2004.

However, prior to her February 2005 trial, Menezes was
reinstated as a full-time, United Airlines flight attendant.   At
trial she stipulated that her net monthly income from United
Airlines was $2,415.60.   She also received from United Airlines
$330 a month for meals.  In addition, in 2004, Menezes worked part-
time for the Concord Public Schools and was paid  $1600, or at
least $133.33 per month, for that work.  Moreover, prior to trial
she had received a $7500 payment as part of the settlement of the
lawsuit that resulted in her reinstatement, with full seniority, as
a United Airlines flight attendant.

The bankruptcy court evidently believed Menezes testimony that
she had monthly expenses of $843 in addition to the $1,018.66
listed on Schedule J.  Although it referred only to Exhibits I and
J, this court assumes the bankruptcy court recognized that Menezes

10

was earning far more each month than the $529.27 listed on Exhibit
I because it stated that she had "somewhat of a surplus."  Tr. at
130.

However, the surplus of income above the maximum expenses
necessary to maintain her current lifestyle was a minimum of
$553.94 a month.  This surplus would increase to $687.27 a month if
the income from the Concord Public Schools were added.  It would
increase to over $1000 if the $330 monthly meal allowance were also
added.  Moreover, at the time of trial, Menezes had the $7500
proceeds from her lawsuit.

Menezes had a right to consolidate her student loans with the
United States Department of Education, including the right to
participate in the William D. Ford Direct Repayment Loan Program
(the "Ford Program").  See 34 C.F.R. §685.100-685.402. One of the
consolidation options under the Ford Program is the Income
Contingent Repayment Program.  See 34 C.F.R. §635.209.  Under the
Ford Program, Menezes' initial monthly payment on her SUNY loan
would have been $16.90 and her monthly payment on her ECMC loans
would have been about $50 per month.  After the 25 year repayment
period, any remaining outstanding debt would be cancelled.

Menezes knew she could participate in the Ford Program, in
part because SUNY sent her applications to participate, and that
her monthly payment on the ECMC loans would initially be about $50
per month.  She chose, however, not to do so.  Rather, Menezes

11

testified, without explanation, that she could not consider the consolidation option that would have reduced her initial payment to ECMC to $50 per month.

Although the issue of the implications of the Ford Program was briefed and argued by the defendants, the bankruptcy court did not address the availability of that option in its decision. However, at the time of trial Menezes had a surplus income over the expenses necessary to continue to live at her current, at least minimal standard, of at least $553 and, more accurately, of in excess of $1000. If she had participated in the Ford Program, her total monthly payments on her SUNY and ECMC loans would have been less than $70. Regardless of whether her monthly surplus was about $553 or more than $1000, Menezes clearly had the discretionary income to make payments on the SUNY and ECMC loans without undue hardship.

To the extent that the bankruptcy court relied on the findings that Menezes' monthly expenses understated her need for clothing, medical, and dental care, such findings are unsupported by evidence in the record. Menezes did not testify that she needed clothing that she could not afford to buy. She did testify that she was insured by MassHealth and was in the process of securing health and dental insurance from United Airlines. In the absence of evidence sufficient to permit the reasonable inference that Menezes had unmet needs for clothing, and medical and dental care, the bankruptcy court's finding of those facts was merely speculation

and, therefore, clearly erroneous.  See Smith v. Educ. Credit Mgmt.
Corp., 328 B.R. 605, 613 (B.A.P. 1st Cir. 2005).

In view of the foregoing, this court finds that the bankruptcy
court erred as a matter of law in implicitly finding that it would
be an undue hardship for Menezes to make payment on her SUNY and
ECMC loans at the time of trial.  It was equally incorrect for it
to find that it would be an undue hardship for Menezes to make such
payments in the future.

As indicated earlier, the totality of the circumstances test
also requires special consideration of the prospect of future
changes in the debtor's financial position.  Long, 322 F.3d at 54-
55.  In essence, a debtor seeking discharge based on a medical
condition must prove that the condition will prevent her from
earning sufficient income to repay the debt even if she
participates in an equitable contingent plan like the Ford Program.
See Burkhead, 304 B.R. at 566.

The bankruptcy court reasoned that Menezes had significant
vision and neurological problems which previously precluded
significant employment and that there was no reason to believe that
those problems would not continue over the repayment period of the
loans.  However, viewed in the context of the entire record, it was
clearly erroneous for the bankruptcy court to have implicitly
concluded that Menezes would not in the future have the means to
make the payments on the SUNY and ECMC loans, particularly the less

than $70 per month that would be due initially if she entered the Ford Program.

The record includes the following facts.  Menezes has a B.A. degree from UMass-Amherst, a paralegal certificate, a Certificate of Culinary Arts, and attended law school for three semesters. Therefore, she has training to work in several fields if, for some reason, she were to lose her job as a flight attendant despite her seniority.

At the time of trial, Menezes was qualified to work as a cabin safety inspector at a salary of $60,000 per year, which would more than double the $28,987 annual salary she was then earning. However, she was not eligible to be hired as a cabin safety inspector because of her default on her student loans.  If she cured that default, she would be eligible for a much higher paying position.

While the bankruptcy court stated that the defendants had not controverted Menezes' disabilities, the record clearly refutes this finding.  More specifically, the lenders presented evidence and argued that the Social Security Administration's doctors had not found Menezes either totally or partially disabled from working. In addition, the evidence unequivocally demonstrated that despite any double vision and other problems she may have had, Menezes was able to work full-time for United Airlines and part-time for the Concord Public Schools as well.

Moreover, Menezes did not provide any evidence from a treating doctor or medical expert that she would be unable to continue to work in the future. This militates against the implicit finding that the debtor had proven that despite her current capacity, she would not likely be able to work in the future. See Burkhead, 304 B.R. at 565-66; Garrett v. N.H. Educ. Assistance Foundation (In re Garrett), 180 B.R. 358, 361 (Bankr. D.N.H. 1995).

In summary, a review of the entire record leaves the court with the definite and firm conviction that the bankruptcy court was clearly erroneous in finding that Menezes could not as of the time of trial make appropriate payments on her SUNY and ECMC loans and maintain a minimal standard of living, and that she would not be able to do so during the course of the repayment periods of those loans.

The foregoing analysis persuades this court that the bankruptcy court erred, as a matter of law, in deciding that Menezes had proven undue hardship under a totality of the circumstances test that does not include consideration of the debtor's good faith. It also demonstrates that Menezes failed to prove the first two prongs of the Brunner test, which require that the debtor show inability, at her current level of income and expenses, to maintain a minimal standard of living and the likelihood that this inability will persist for a significant portion of the repayment period. Brunner, 831 F.2d at 396; Nash,

446 F.3d at 190.

The conclusion that the bankruptcy court erred in holding that Menezes had proven undue hardship is reinforced if the third prong of the Brunner test, which focuses on whether there have been good faith efforts to repay the loans, is considered. Brunner, 831 F.2d at 396; Nash, 446 F.2d at 190. The evidence at trial demonstrated that when Menezes filed her Chapter 7 petition in September 2001, the only debts that she had were her student loans. By the time of trial the student loans she was seeking to discharge were $82,595.92, as compared to additional debt of only $7,023.69. Although Menezes owed the $82,595.92 to four entities, she had made only a single, $45 payment on her SUNY loan and no payments at all on the others. In addition, Menezes chose not to participate in the Ford Program. These facts convince this court that Menezes was, prior to filing her Chapter 7 petition and up to the time of trial, substantially able to meet her other financial obligations, but did not make a good faith effort to pay her student loans.

As explained earlier, generally an undue hardship can properly be found only in "truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents." T.I. Fed. Credit Union, 72 F.3d at 927 (citation omitted). Demonstrating such exceptional circumstances is a "formidable task." Nash, 446 F.3d at 191. On the record of this case, the bankruptcy court erred, as a matter of law, in finding that undue

16

hardship had been proven as of the time of trial no matter which test is used to make that determination.

If circumstances materially change in the future, Menezes is not barred from attempting again to make a meritorious case for a discharge of her remaining student loans.  Id. at 194; 11 U.S.C. §523(b).  However, at this point, her claim of undue hardship is not reasonably supported.


V.    ORDER

In view of the foregoing, it is hereby ORDERED that:

1.    The February 3, 2005 decision of the Bankruptcy Court is REVERSED.

2.    This case is REMANDED to the Bankruptcy Court for the entry of judgment consistent with this Memorandum and Order.


                                    /s/ MARK L. WOLF
                                    UNITED STATES DISTRICT JUDGE